UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x

In re:

ALEKSANDR VIROVLYANSKIY,             Chapter 7 Bankruptcy
                                                                  Case No. 11-45486 (CEC)

            Debtor-Appellant.
-------------------------------------------------------- x

JULIYA VIROVLYANSKAYA             Bankruptcy Adversary Proceeding
                                                 Case No. 11-01469 (CEC)

            Plaintiff-Appellee,            **MEMORANDUM AND ORDER**

                                            13 CV 1511 (RJD)

            - against -

ALEKSANDR VIROVLYANSKIY,

            Appellant-Defendant.
-------------------------------------------------------- x

       Aleksandr Virovlanskiy ("Aleksandr") appeals from the judgment of the bankruptcy court (Craig, Ch. J.) denying his Chapter 7 petition for discharge in bankruptcy. Aleksandr both challenges the bankruptcy court's findings and argues that the matter was non-justiciable because no creditor with Article III standing challenged his entitlement to a discharge. We affirm.

       Aleksandr filed his Chapter 7 petition on June 25, 2011, seeking to discharge debts consisting primarily of credit card debt and child support arrears owed to his estranged wife, pro se plaintiff-appellee Juliya Virovlanskaya ("Juliya").[1] (Decision 1, ECF No. 1). However, in his petition, Aleksandr did not disclose compensation he earned in Russia during 2009 and 2010, despite the requirement that he do so in his Statement of Financial Affairs. (Id.). He also falsely stated in Schedule I that he had been unemployed since 2008. (Id.) Juliya commenced an

---

[1] The parties dispute whether they have been properly divorced.

adversary proceeding on September 29, 2011, objecting to Aleksandr's general discharge under 11 U.S.C. § 727(a) and objecting to the dischargeability of his individual debts under 11 U.S.C. § 523. (Compl. and Adversary Cover Sheet, ECF No. 1-1). In that adversary proceeding, Aleksandr did not dispute that he had omitted work income and did not contest the falsity of his claim to have been unemployed since 2008. (Decision 5). Rather, Aleksandr maintained that he did not make these misrepresentations with fraudulent intent, asserting that he initially relied on his attorney's mistaken advice that he need not disclose compensation earned in Russia, and pointing out that he immediately amended the petition once he learned otherwise. (Appellant Br. 2, ECF No. 7); (Answer, ECF No. 1-5); (Trial Tr. 9-10, ECF No. 1-13).

The adversary proceeding eventually went to trial and the bankruptcy court denied discharge. (Decision 9). Before that, however, the court held a conference in which Judge Craig expressed concern that Juliya had no direct interest in pressing the adversary proceeding. (Conference Tr. 4-7, 18-19, Jan. 19, 2012, ECF No. 1-6). As Judge Craig explained to Juliya, Aleksandr's child support obligations and arrears are not dischargeable in bankruptcy. (Id. at 5). Accordingly, the court further explained, Juliya's interests might be poorly served if Aleksandr did not receive a discharge, because Juliya would then have to compete with his other creditors. (Id. at 22-23).

Juliya responded that she did have an interest in bringing the adversary proceeding, because Aleksandr had in the past convinced the Family Court of the State of New York to diminish his support order. (Id. at 18); (Family Ct. Findings of Fact, Apr. 30, 2010, ECF No. 1-8 Ex. 21; Family Ct. Findings of Fact, Feb. 18, 2011, ECF No. 1-8 Ex. 22). Juliya suspected he would find a way to leverage his discharge to do so again (Jan. 19, 2012 Tr. 6), possibly by using the discharge to misrepresent his financial situation in the Family Court. (Conference Tr. 3, Mar.

2

8, 2012, ECF No. 1-7). Juliya also responded that she wanted to ensure that Aleksandr did not perpetrate a fraud on the court. (Jan. 19, 2012 Tr. 19). Less graciously, Juliya hinted that she might herself wish to leverage the bankruptcy proceedings to press fraud charges against Aleksandr. (Id. at 23-24); (Compl. 1). A representative of the United States Trustee's Office also attended the conference, but explained that the Office would not join Juliya's adversary proceeding. (Jan. 19, 2012 Tr. 9-10). The bankruptcy court scheduled further proceedings. (Id. at 27).[2] Aleksandr, also pro se at that time, sat silently.

The bankruptcy court held trial on July 31, 2012. The court rightfully closed down certain lines of inquiry pursued by Juliya, such as her examination of Aleksandr on whether he purposely accumulated his credit card debts with no intent to repay those debts (Trial Tr. 13, 17-19), and her related examination of Aleksandr's immigration status and travel habits on the theory that he intended to move to Germany to avoid his creditors. (Id. at 16-17, 19-20). But, after a difficult start, Juliya's examination bore fruit. For instance, Juliya resumed her examination of Aleksandr's travel habits, not on the theory that he was trying to hide from his creditors, but on the more appropriate theory that he may have received more wages or acquired more assets in Russia than he had disclosed in his amended petition. (Id. at 22, 29-31). Substantively, those questions were not particularly damaging. But, by referencing a potential piece of impeaching evidence, Juliya prompted Aleksandr to abruptly reverse his answer on the otherwise minor question of whether Aleksandr had visited France. (Id. at 31)[3]; (Decision 6). That exchange damaged his credibility in the eyes of the bankruptcy court. (Id.)

---

[2] The court held a second conference on March 8, 2012 in which Judge Craig reiterated her earlier concerns and Juliya stood by her decision to press the adversary action. (Conference Tr. 2-3, ECF No. 1-7). The United States Trustee never reconsidered its position.

[3] We emphasize just how abrupt by quoting and paraphrasing that brief colloquy: "Q: [W]ere you traveling over the period of time? A: No. . . . Q: You didn't visit any country? A: No. Q:

3

Another damaging exchange – again, not substantively, but in terms of credibility – occurred when Juliya asked Aleksandr at length about a notarized filing he made in Family Court (Trial Tr. 65-85), in which Aleksandr asserted that he could not appear telephonically before that court because of work responsibilities. (Id. at 78) (Letter, Sep. 10, 2010, ECF No. 1-8 Ex. 21). Aleksandr had confirmed that he lived in St. Petersburg. (Trial Tr. at 66). Yet he notarized the Family Court filing in Vladivostok (Id. at 72), clear across the enormity of Russia. That is certainly an odd fact, almost as if Aleksandr had claimed that he could not appear by phone in New York because of his work responsibilities in Los Angeles, in a letter dispatched from Fairbanks. But it is a fact that could have a reasonable explanation. However, when Juliya pressed Aleksandr to explain why he went from St. Petersburg to Vladivostok to notarize a document, he admitted that he had used work responsibilities as an "easy" excuse not to appear in Family Court, when in fact he could not appear because of other court hearings. (Id. at 76). Even so, that candor might have rehabilitated him somewhat, except Aleksandr shifted tack again, explaining that he could not appear because he was trying to find a job (Id. at 80-81), and then claiming he had no recollection of why he could not appear at all. (Id. at 81). These equivocations further undermined his credibility with the bankruptcy court. (Id. at 82); (Decision 6). At one point during the exchange, Aleksandr's then-attorney objected that Juliya was pursuing a "personal vendetta[.]" (Trial Tr. 70). But counsel conceded (correctly) that Juliya met the statutory definition of a "creditor" and the court moved on with the trial. (Trial Tr. 70-71); See 11 U.S.C. § 727(c)(1).

In its decision, the bankruptcy court noted other instances in which Juliya uncovered apparent misrepresentations, or in which Aleksandr made misstatements on the stand. (Id. at 6-

---

How about France? A: No. Q: [What about that picture of you on Facebook in front of the Eiffel Tower? Objection overruled.] Did you go to France or not? A: Yes, I did." (Id. at 30-31).

7). The court therefore determined that it could not credit Aleksandr and thus rejected his claim to have relied on his attorney (as well as the more outlandish claim that he omitted his overseas earnings because he could not convert rubles into dollars). (Id. at 7). The court further reasoned that Aleksandr only amended his petition after Juliya informed the Trustee of his omissions at the meeting of creditors, explaining that: "in this case, it appears that the income was disclosed only after his misrepresentation was exposed by [Juliya.]" (Id.) The court denied discharge under 11 U.S.C. § 727(a)(4)(A), which authorizes the court to deny discharge to a debtor who "knowingly and fraudulently" makes a "false oath" "in or in connection with" the bankruptcy proceedings.

Aleksandr challenges these findings on appeal, conceding as he must that we review them for clear error. (Appellant Br. 1); See, e.g., Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet), 737 F.3d 238, 246 (2d Cir. 2013). But, before reaching that issue, he argues for the first time that, although Juliya may have had statutory standing as a "creditor" under 11 U.S.C. § 727(c), she lacked standing under Article III § 2 of the United States Constitution. Pivoting off Judge Craig's wise observation that Juliya's interests are probably ill-served by denial of discharge, Aleksandr argues that Juliya has no interest – in the constitutional sense – to vindicate in the first place. Aleksandr claims that the bankruptcy court should therefore have dismissed the adversary proceeding sua sponte and granted Aleksandr his Chapter 7 discharge. The Court reviews that issue de novo. See, e.g., Field Day, LLC v. Cnty. of Suffolk, 463 F.3d 167, 175 (2d Cir. 2006) (citing Shain v. Ellison, 356 F.3d 211, 214 (2d Cir. 2004)).

Article III § 2 of the Constitution states that the "power" of the federal courts extends only to "cases" or "controversies." Of course, no observer would contend that the bitter dispute between Aleksandr and Juliya is not a "controversy" in the ordinary sense of the word. But, in

5

the constitutional sense, the words "case" or "controversy" carry a highly specialized meaning, encompassing technical doctrines such as standing, mootness, and ripeness, all under the rubric of justiciability. See In re Davis 191 B.R. 577, 582 (Bankr. S.D.N.Y. 1996) (citing Flast v. Cohen, 392 U.S. 83, 94-97 (1968)). Bankruptcy courts are constituted pursuant to Article I. See Mt. McKinley Ins. Co. v. Corning Inc., 399 F.3d 436, 447 (2d Cir. 2005). Yet they are subject to these same constitutional limits, and so the requirement of a justiciable "case" or "controversy" applies in the bankruptcy court. See, e.g., Gimbi v. Beck (In re ContiFinancial Corp.), 336 F. App'x 29, 30 (2d Cir. 2009).

Standing refers to the requirement that a plaintiff in federal court suffer a non-speculative injury-in-fact, traceable to the conduct of the defendant, and – most importantly, in this case – redressable by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). In other words, a court has no power to decide a case in favor of a plaintiff unless the defendant's conduct harmed the plaintiff and the court has the power to remedy that harm. See Id. Mootness, a closely related doctrine, forecloses the court's continued jurisdiction over a case when the plaintiff has received all the remedy it is entitled to, because a plaintiff must maintain a "personal stake" in the case at all times. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980).

Aleksandr argues that Juliya's only redressable injury in the bankruptcy proceedings is the imminent discharge of the ongoing child support debt he owes Juliya pursuant to the Family Court's support order. However, says Aleksandr, because neither his ongoing obligations under the child support orders nor his arrears cannot possibly be discharged in the Chapter 7 proceeding, the court's denial of Aleksandr's general discharge affords no additional relief to Juliya. Accordingly, says Aleksandr, Juliya had no standing to object to discharge. Or perhaps

6

she had standing to object, but her objection became moot once Aleksdandr correctly conceded that the child support order and arrears cannot be discharged. Whether couched in terms of standing or mootness, the argument is the same: Juliya had already won, and thus had no broader stake in the outcome of Aleksandr's Chapter 7 petition.

In support of this argument, Aleksandr first directs our attention to G&G Card & Gifts, Inc. v. Berman (In re Berman), 100 B.R. 658, 660 (Bankr. E.D.N.Y. 1988), which held that a secured creditor (whose debts are nondischargeable) lacked standing to challenge a general discharge because such a creditor would not be affected in any way from the grant or denial of discharge. Aleksandr then points the Court to extra-circuit authority applying the doctrines of standing and mootness to dismiss adversary proceedings brought by former spouses: Neal v. Neal (In re Neal), 302 B.R. 275 (8th Cir. B.A.P. 2003); Matthers v. Matthers (In re Matthers), 2011 WL 1789981 (Bankr. N.D. Ga. 2011); Mapley v. Mapley (In re Mapley), 437 B.R. 225 (Bankr. E.D. Mich. 2010). These three cases in turn derive from the court's decision in Day v. Klingler (In re Klingler), 301 B.R. 519 (Bankr. N.D. Ill. 2003), which we discuss in some detail.

In In re Klingler, the debtor, Klingler, had tricked the plaintiff, Day, into giving him a $1850.00 loan. Id. at 521. Day proved very persistent in trying to get that money back, first bringing proceedings in state court all the way to judgment and then bringing an adversary proceeding when Klingler filed for bankruptcy under Chapter 7. Id. at 521-22. That adversary proceeding sought an order declaring Day's judgment nondischargeable under 11 U.S.C. § 523(a)(2) (that is, because Klingler used false pretenses to obtain the underlying loan). Id. at 522. While that adversary proceeding moved forward, Klingler received his general Chapter 7 discharge. Id. Incensed, Day commenced a second adversary proceeding seeking to revoke Klingler's general discharge. Id. In support, Day claimed that Klingler, in a bid to conceal

7

assets, had falsely represented that he participated in a mandatory pension plan when he actually participated in a voluntary 401(k) plan. Id. But, before that second adversary proceeding progressed very far, Day won his first adversary proceeding, obtaining his order declaring his judgment against Klingler nondischargeable. Id. at 523.

The bankruptcy court held that this victory rendered Day's objection to Klingler's general discharge moot. Id. The court explained:

> As a result of the first adversary, the debt Klingler owes Day will not be discharged. Having prevailed in that proceeding, Day no longer has any personal stake in any other discharge decision. He stands to gain nothing in the second adversary if he prevails. At most, he is litigating now to vindicate the rights of any remaining creditors, which he cannot do. Powers v. Ohio, 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (plaintiff in federal court "must assert his or her own legal rights and interests, and cannot rest a claim for relief on the legal rights or interests of third parties"). Or else he is simply litigating out of distaste for Klingler, which he also cannot do. Foster v. Center Twp. of LaPorte County, 798 F.2d 237, 244 (7th Cir.1986) (mere indignation at the defendant or disapproval of his conduct will not create a case or controversy).
>
> Because Day received in the first adversary all the relief he was entitled to obtain in the second, there is no further relief the court can grant him, and the second adversary proceeding is moot.

Id. at 524 (footnotes omitted).

The decisions in In re Neal, In re Matthers, and In re Mapley extend this reasoning to proceedings in which the debtor's former spouse brought an adversary proceeding objecting to discharge. In all three cases, the former spouse asserted nondischargeable domestic support orders and were therefore creditors within the meaning of 11 U.S.C. § 727(c). Yet the courts concluded that the plaintiffs had no standing to object to discharge (or concluded that the case had become moot) because discharge would not provide plaintiffs any additional relief. See In re Neal, 302 B.R. at 279 ("An appeal is moot if we can grant no effective relief because the plaintiff has already received all the relief the trial court can offer."); In re Matthers, 2011 WL 1789981 at

8

\*2 ("The Complaint fails to assert any claim against Debtor that would not already be nondischargeable[.]"); In re Mapley, 437 B.R. at 228-29 ("[I]t is clear that none of the debt in question will be discharged even if the Debtor obtains a discharge in his Chapter 7 case. . . . Plaintiff can gain nothing for herself by blocking the Debtor's discharge under § 727.")

Naturally it would have been helpful for Aleksandr to have expressly contended that the constitutional limits set forth in Article III barred Juliya's adversary proceeding (although trial counsel did raise the possibility of insufficient standing in inchoate terms when he characterized Juliya's that proceeding as a "vendetta" during the trial). Nevertheless, because justiciability goes to the heart of the court's power to decide the case, it cannot be waived. See, e.g., Cooper v. United States Postal Serv., 577 F.3d 479, 489 (2d Cir. 2009). The Court must therefore consider Juliya's standing. And we see a good deal of merit in Aleksandr's argument that a creditor asserting only nondischargeable debts has no Article III standing to commence a separate adversary proceeding objecting to discharge, as well as the cases Aleksandr cites in support.[4] Yet we do not reach that question because, in the Court's view, Aleksandr's delay is still fatal – not because he has waived the issue of Juliya's standing, but because part of the entire "case" (his own Chapter 7 non-adversary proceeding) remains justiciable, and the bankruptcy court has now made findings that disqualify him from relief in that proceeding.

After all, Aleksandr does not simply ask us to dismiss Juliya's adversary proceeding, he asks that we remand with instructions to enter judgment in his favor in the non-adversary proceeding, even though the bankruptcy court has adjudged him a fraudulent litigant. What he

---

[4] The Court has not been directed to any controlling Second Circuit authority on the question. We note that at least one unpublished disposition affirmed denial of discharge in a case brought by a debtor's former spouse who asserted child support debts. Nash v. Yablon, 189 F.3d 461, 1999 WL 568037, at \*1 (2d Cir. 1999). But that disposition did not consider Article III justiciability.

ultimately wants us to do, then, is order the bankruptcy court to ignore its earlier fact findings in disposing of the Chapter 7 petition. There is an unexamined premise in that contention: that, once the bankruptcy court terminates the adversary proceeding, the court has no residual authority under 11 U.S.C. § 727(a) to deny discharge. We think the bankruptcy court <u>does</u> have that authority (at least in this unusual procedural setting, in which the court has held a full trial) and thus will not require the court at this late juncture to throw out half the case as non-justiciable while deciding the justiciable half in appellant's favor.

In reaching this conclusion, we rely primarily on the language of the statute, which in our view indicates that the bankruptcy court may itself determine the debtor's suitability for discharge under the false oath provision of 11 U.S.C. § 727(a)(4)(A), even if the adversary proceeding in which the court made its findings was not itself justiciable. Section 727(a) states that "[t]he court shall grant the debtor a discharge, unless" one of twelve statutory exceptions applies. That phrasing suggests that Section 727(a) sets forth a rule of decision applicable in any given Chapter 7 case, including the non-adversary proceeding itself. On the other hand, Section 727(c) states that "[t]he trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a)[,]" while Bankruptcy Rule 7001 states that "[t]he following are adversary proceedings . . . a proceeding to object to or revoke a discharge." That phrasing suggests that Section 727(a) sets forth a list of statutory rights to be invoked only by an adversary and applied solely in an adversary proceeding. See <u>Canganelli v. Lake Cnty. Ind. Dep't of Pub. Welfare (In re Canganelli)</u>, 132 B.R. 369, 382-84 (Bankr. N.D. Ind. 1991).

But we think the latter reading is too narrow. For one, the applicability of certain Section 727(a) exceptions is so clear – such as the requirement in Section 727(a)(1) that the debtor be an individual, or the requirement in Section 727(a)(11) that the debtor complete a financial

10

management course – that it seems strange to hold as a general rule that a bankruptcy court may never apply the Section 727(a) exceptions in the absence of an adversary proceeding. See also In re Asay, 364 B.R. 423, 426-27 (Bankr. D.N.M. 2007) (concluding that the mandatory language of 11 U.S.C. § 727(a)(8) and general grant of authority to "prevent an abuse of process" in 11 U.S.C. § 105(a) authorizes the bankruptcy court to close a case without granting discharge when debtors had obtained discharge within the previous six years). Second, although the false oath provision at Section 727(a)(4)(A) is not as capable of ready application as these other provisions, there is good reason to conclude that it too may be applied absent an objection: the provision is designed to protect not only the interests of creditors, but the integrity of the court's own proceedings; it is punitive in nature, not merely remedial. State Bank of Graymont v. Rich (In re Rich), 202 B.R. 107, 108 (Bankr. C.D. Ill. 1996). It follows that, once the bankruptcy court has determined that the debtor has committed fraud in his Chapter 7 petition, it need not (and, arguably, must not) grant a discharge, even if the court reached this determination in the context of an adversary proceeding that was non-justiciable. Id.; See also In re Melendez, 235 B.R. 173, 188 (Bankr. D. Mass. 1999) (concluding that the court may examine whether proposed reaffirmation agreements between debtor and creditor satisfied the requirements of 11 U.S.C. § 254, even though court arguably lacked jurisdiction under Article III because no party objected to the agreements). In that limited sense, the debtor delays at his peril. He may have good reason to complain that the court should never have moved forward with the adversary proceeding, but he cannot force the court to blind itself to fraudulent conduct once it has been shown at trial.[5]

---

[5] We do not think this narrow conclusion invites the bankruptcy courts to ignore the constitutional and statutory limitations on their jurisdiction.

As we have said, Article III justiciability cannot be waived. But fraud in the proceedings cannot be ignored. Our holding is that, as long as Aleksandr seeks the protection of the bankruptcy court, the non-adversary part of the case remains justiciable, and because the bankruptcy court must enforce a statutory mandate in resolving that part, its previous findings of fraud cannot be discarded, even if those findings derived from an adversary proceeding that should not have moved forward (as we have assumed, but not decided).

One final point on Article III: even if we are wrong, and the bankruptcy court cannot deny discharge under 11 U.S.C. § 727(a)(4)(A) on the basis of findings made during a non-justiciable adversary proceeding, reversal and remand for granting of discharge would not be an appropriate outcome in this case. Juliya's Complaint makes allegations, as yet undeveloped, that Aleksandr was "opening many credit card accounts which I was not aware of[,]" that he "took ... my personal money (more than $10,000)" in October 2007, which he then used to buy a Nissan Pathfinder, that he "took around $17,000 from our joint account[,]" and that he "refused to pay for our apartment even though his name was on the lease." These allegations, if they have any substance, would seemingly give rise to unliquidated claims and debts within the meaning of 11 U.S.C. § 101(5). Some of these claims might, like the child support order and arrears, clearly fall within the discharge exceptions set forth in 11 U.S.C. § 523, and therefore would not confer standing because they "cannot be made any more nondischargeable" than they already are. In re Klingler, 301 B.R. at 524. Others seemingly would not fall within the Section 523 exceptions, and so a discharge injunction could effectively put those claims beyond Juliya's reach. See 11 U.S.C. § 524(a); Green v. Welsh, 956 F.2d 30, 36 (2d Cir. 1992) (reiterating that discharge prevents plaintiff from pursuing state tort action to establish personal liability of debtor, but allowing action to proceed on the condition that recovery would be permitted only from debtor's

insurer). Similarly, Juliya's allegations regarding the apartment lease raise the possibility that discharge would leave her primarily liable for debts incurred by both parties.

In our view, either of these injuries – Juliya's potential loss of remedies for Aleksandr's alleged torts and her primary obligation to satisfy debts that would otherwise be borne by both – would confer not just statutory standing, but also Article III standing, even under the theory of adversary standing set forth in In Re Klingler.[6] Cf. Brundege v. Brundege (In re Brundege), 359 B.R. 22, 29 (Bankr. E.D.N.Y. 2007) (inchoate interest in marital property and joint liability on credit cards confer statutory standing); Hunn v. Hunn (In re Hunn), 49 B.R. 430, 430 (Bankr. M.D. Fla. 1985) (contingent marital debts confer statutory standing). Indeed, the courts in both In Re Berman and In Re Mathers, rather than dismiss outright, gave plaintiff the opportunity to demonstrate the existence of unliquidated claims or dischargeable debts that would confer standing. See In re Matthers, 2011 WL 1789981, at *2 ("[T]he Court must dismiss the Complaint unless the Complaint is amended to include additional facts to support the finding that Plaintiff holds claims against Debtor that arose prior to the petition date and would not be nondischargeable under section 523(a)(5) or (a)(15)."); In re Berman, 100 B.R. at 660 (permitting leave to amend to allege "the existence of an unsecured claim, if one exists, or some other right which would be substantially affected by the Debtor's discharge."). A similar approach would seem appropriate here, though the Court notes that, at this point in the litigation,

---

[6] In contrast, we do not think the allegation that Aleksandr would somehow leverage the bankruptcy proceedings to trick the Family Court into diminishing his arrears or monthly payments states a threatened injury that would confer standing. First, at present that injury is far too speculative. See Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013) ("'[T]hreatened injury must be certainly impending to constitute injury in fact'" (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990))). Second, even if the Court believed Aleksandr would make such a bid, we suspect the Family Court would easily see through the ruse. See, e.g., Ross v. Sperow, 871 N.Y.S.2d 736, 738 (App. Div. 2008) (rejecting spouse's contention that discharge in bankruptcy terminated his obligation to comply with Family Court's order directing him to pay attorney fees, because that order was in the nature of support).

Juliya could not rest solely on the allegations of her Complaint. See Defenders of Wildlife, 504 U.S. at 561 (allegations of complaint are sufficient to establish standing at the pleading stage, but not at summary judgment or at trial).

Our disposition of the Article III issue leaves us with the question of whether the bankruptcy court's findings were clearly erroneous. Without doubt (and as the court detailed) Aleksandr offered much testimony at the trial that undermined his credibility in asserting the advice of counsel defense. Aleksandr argues that these apparent misstatements were actually the product of mistranslation and confusion, from which the court should not have "inferred [that Aleksandr was] lying on the stand" and which were, in any event, "insufficient to prove actual intent." (Appellant Br. 19). In support, Aleksandr cites cases with similar facts in which the reviewing court either credited the debtor's advice of counsel defense, concluded that issues of material fact remained on summary judgment, or determined that any fraud was insufficient to justify denial of discharge. This convinces the Court only that some hypothetical bankruptcy court might have found Aleksandr credible or stopped short of denying discharge; it does not convince us that the bankruptcy court erred here. On the contrary, as Aleksandr notes, the transcript is in many places a "bundle of confusion" (Id.), which marks this case as a prime example of why appellate courts must defer to the credibility determinations of trial courts. See, e.g., Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs., Ltd., 422 F.3d 72, 76 (2d Cir. 2005) (citing Joseph Brenner Assocs., Inc. v. Starmaker Entm't, Inc., 82 F.3d 55, 57 (2d Cir.1996)).

Aleksandr also objects that "the court never conducted an inquiry into the merits of [Aleksandr's] defense that he was following the advice of his counsel." (Appellant Br. 20). But, once he conceded that he made misrepresentations, it was Aleksandr's burden to provide a

credible explanation. See Carlucci & Legum v. Murray (In re Murray), 249 B.R. 223, 228 (E.D.N.Y. 2000) (explaining that, when debtor makes false statement, burden is "upon the debtor to come forward with evidence to prove that it was not an intentional misrepresentation. If the debtor fails to provide such evidence or a credible explanation for his failure to do so, a court may infer fraudulent intent." (quoting In re Gollomp, 198 B.R. 433, 437 (S.D.N.Y.1996))). He offered one, but the court found it not credible – which, again, is a determination we owe substantial deference.

Aleksandr also challenges the materiality of his failure to disclose work income, purporting to distinguish Moreo v. Rossi (In Re Moreo), 437 B.R. 40 (E.D.N.Y. 2010), relied upon by the bankruptcy court, on the grounds that full disclosure would not have affected the ultimate disposition of Aleksandr's estate. (Appellant Br. 24). Yet, even assuming arguendo that In re Moreo is distinguishable on that basis, we think Aleksandr's omission easily meets the relatively low threshold of materiality in Section 727(a) cases. See, e.g., New World Rest. Grp., Inc. v. Abramov (In re Abramov), 329 B.R. 125, 134 (Bankr. E.D.N.Y. 2005) (citations omitted) ("Materiality [under Section 727(a)(4)(A)] does not depend upon whether the falsehood or omission contained in the debtors' petition turns out to be detrimental to creditors. Even worthless assets and unprofitable business transactions must be disclosed[.]"). The court was under no obligation to apply the more forgiving view of materiality set forth in, inter alia, Coccia v. Fischer (In re Fischer), 4 B.R. 517, 518 (Bankr. S.D. Fla. 1980). (See Appellant Br. 23). There is no clear error in the bankruptcy court's findings and consequently no error in its denial of discharge.

Finally, we note that Aleksandr has objected to Juliya's attachment of material to her brief that was not presented to the court below. (Appellant Reply Br. 1, ECF No. 9). The Court

15

has not considered these materials because they are not properly part of the appellate record. See Fed. R. Bankr. P. 8006. Juliya also attached supplemental materials in two letters filed with the Court after the close of briefing; we have not considered those materials either. (ECF Nos. 11 and 12). In addition, Juliya has issued Rule 45 subpoenas to third-parties and asks the Court to issue an order directing them to comply. (ECF No. 12). Because the Court exercises appellate jurisdiction in this matter, 28 U.S.C. § 158(a), we deny that request.

The Court affirms. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: Brooklyn, New York
May 2, 2014

/s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge